**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Laboratory Charter School, | : |
| *Plaintiff,* | : CIVIL ACTION |
| v. | : No. _____ |
| AM, by and through his Parent, KB, and his Parent individually, | : |
| *Respondents.* | : |

**CIVIL ACTION COMPLAINT**

Plaintiff, Laboratory Charter School ("School" or "Lab Charter"), by and through its undersigned counsel, hereby files this Complaint in the nature of an appeal pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), P.L. 108-446, 118 Stat. 2647-2808 (Dec. 3, 2004), 20 U.S.C. § 1401-1482, from a Hearing Officer's administrative decision dated April 30, 2025.[1] Jurisdiction is appropriate in this Court pursuant to federal question jurisdiction, 28 U.S.C. § 1415(i)(3)(A), and pursuant to express authorization in IDEA, 20 U.S.C. § 1415(i)(3)(A). In support of its appeal, Lab Charter states as follows:

**I.  Introduction/Preliminary Statement**

1.  On November 26, 2024, Parent, KB ("Parent"), individually and on behalf of her son, AM ("Student"), presented to the Pennsylvania Department of Education, Office of Dispute Resolution (the "ODR"), a Due Process Complaint against Student's present elementary school, Lab Charter, which raised claims for immediate and prospective relief arising from an alleged

---

[1] A true and correct, redacted copy of the decision that Lab Charter appeals is attached hereto as Exhibit A.

denial of Free Appropriate Public Education ("FAPE"). The Complaint requested changes in educational programming, an award of compensatory education in an unspecified amount, and prospective action in the form of the future financing of education in an alternatively designated educational institution. The administrative complaint time period of looking two years back from November 26, 2024 to November 26, 2022 was confirmed by Parent's counsel, and there was no indication that the claims related to time periods outside of that established range. Hearing Notes of Testimony (N.T. 33-34).

2. The School denied Parent's claims, and the ODR held hearings on January 22, 2025, February 10, 2025, and February 25, 2025, before Hearing Officer Charles Jelley ("HO Jelley").

3. Despite the clear result required by the evidence presented by the parties, however, HO Jelley issued a Final Decision and Order on April 30, 2025, which concluded Lab Charter failed to offer and provide a FAPE for each school year at issue (2022-23, 2023-24, and 2024-25), even though the only relevant time period allowed under the applicable statute of limitations was from November 2022 to November 2024.

4. Even worse, HO Jelley awarded Student a variety of categories of relief that were not even requested by Parent. Included among the relief provided by HO Jelly were retrospective compensatory education awards and ESY compensation for periods not requested by Parent, prospective compensatory education based on an inappropriate continued accrual period, the funding of an independent education evaluation and 100-day diagnostic placement, and evaluations during and after that diagnostic placement. The School was not permitted any opportunity to defend against the unsupported demands of the Hearing Officer made in his Decision.

5. For the reasons that follow, HO Jelley's April 30, 2025 decision and order were clearly erroneous as a matter of law unsupported by any evidence from a qualified educational expert, contrary to the clear and well supported evidence presented through well qualified and independent educators and psychologists and the well qualified school personnel and teachers and on the basis of the Hearing Officer acting as an expert not supported in the documentary evidence or testimony. It must therefore be reversed at this time, with the Court instead finding that Lab Charter did not deny Student FAPE at all during the relevant timeframe.

II. **Statement of Facts as Evidenced at the Due Process Hearings**

6. Student is an 11-year-old fifth grade student at Lab Charter, who has faced many challenges throughout his education after being diagnosed with ADHD and qualifying for special education under the category of Other Health Impairment (OHI). He has been a student at Lab Charter since he was in first grade in 2020.

7. Despite Parent's allegations that the School failed to provide Student with FAPE, and the Hearing Officer's erroneous conclusions finding those allegations had merit, the evidence and witness testimony set forth at the Due Process Hearings firmly established that the School's proactive and thorough responsiveness to all of Student's educational and behavioral needs require a finding that Lab Charter has adhered to all applicable legal mandates.

8. At the hearings, Parent alleged in her testimony that the School failed in its responsibilities because Student demonstrated insufficient academic progress and faced unresolved behavioral challenges requiring placement in a restrictive, autism-specific program at Step Up Academy, with an estimated cost of $100,000.

9. Those allegations of Student's lack of educational progress at Lab Charter were based on:

     a. Inadmissible hearsay statements allegedly made by Student to his Parent with no independent back up;

     b. Parent's estimation of Lab Charter's class sizes and her son's behaviors and achievements despite the fact she has never once observed Student in class at the School;

     c. Unsupported and contradicted claims that Parent repeatedly communicated concerns to the School about Student's lack of educational progress and increasing behavioral problems during unspecified periods;

     d. Unsupported allegations that transportation was not being properly provided, causing unrecorded excessive absences and latenesses;

     e. Unsupported allegations that the School's recording of Students grades achieved was false ("It's a lie. Everything on there is a lie"); and

     f. The need for Student to be transferred at the School's great expense ($100,000 a year) from Lab Charter to Step Up Academy, a school for autistic children that her other son attends, without any supporting expert testimony that such a deliberate break from the required least restrictive environment rule was necessary.

10. These assertions clearly lack any credible evidence, as Parent's testimony contained contradictory statements and unsubstantiated claims. Notably, Parent stated that she provided documents to her counsel that substantiated her positions, but this evidence was neither marked nor submitted into the administrative record. Moreover, Parent's own participation in Student's education was extremely limited, as she never observed him in class or engaged directly with his special education instructors, further diminishing the credibility of the claims made.

11. In stark contrast, the testimony provided by Lab Charter's witnesses illustrated the School's steadfast commitment to addressing Student's educational requirements.

12. Student's special education teacher for the fourth and fifth grades, Ms. Patrina Stewart, explained the School's concerted efforts to support Student's academic growth through individualized instruction in push-in classroom intervention and small group pull-out sessions.

Her testimony highlighted his noticeable improvements in reading and mathematics, and he consistently met or exceeded grade-level expectations in several areas. Although Student exhibited some emotional and behavioral challenges, the School was able to effectively manage those challenges with its already established strategies – the challenges were not indicative of any need to put Student in a more restrictive environment as Parent suggests. Rather, it was Ms. Stewart's opinion that transferring Student to an autism-specific program would unnecessarily limit his potential and negatively impact his educational trajectory.

13. The School's Special Education Director confirmed Ms. Stewart's testimony of the School's efforts to support Student. Drawing upon her extensive credentials and expertise in special education, Ms. El explained that the Individualized Educational Programs ("IEPs") created by Lab Charter for Student were meticulously crafted and regularly updated to address his evolving needs. She affirmed that, while Student did have an autism diagnosis, his educational needs were being fully met within the current framework of supports offered by Lab Charter, which included executive functioning strategies and targeted behavioral support mechanisms. This testimony fully supported that there is no need for Student to be placed in a more restrictive educational environment.

14. Further insights were provided by Thurraya Berry Petteway, a seasoned school psychologist who evaluated Student in December 2023. Ms. Petteway's assessment corroborated the adequacy of Student's education at Lab Charter. She noted that, while he occasionally exhibited challenges associated with an ADHD diagnosis, such as inattention and task avoidance, those behaviors were not sufficiently severe to warrant additional evaluations like a Functional Behavioral Assessment ("FBA"). The analysis also underscored that Parent failed to raise any concerns regarding Student's educations during his earlier years of enrollment, showcasing that

Lab Charter was making a consistent effort to address Student's needs based on the information in its possession.

15. Ms. Petteway's findings and conclusions were confirmed by the FBA ultimately performed for the School by Jenna Miller, an independent qualified psychologist employed by the School. Ms. Miller's FBA concluded that Student's behaviors aligned with ADH, and he did not exhibit characteristics necessitating placement in an autism-specific program with significant restraints.

16. Lastly, Lab Charter's Special Education Coordinator, Ms. Michelle Chapman, highlighted the School's extensive communication efforts with Parent about Student's education, the School's proactive provision of documentation and supports to move forward with that education, and its persistent attempts to involve Parent in key educational decisions. Unfortunately, these efforts were repeatedly rebuffed, with Parent declining opportunities for Student to participate in the School's Extended School Year ("ESY") program, opting instead to send him to a summer camp, and failing to respond to offers to observe Student in his classroom setting at the School. These actions further undermined the Parent's claims of active participation in Student's education and demonstrated the School's commitment to engaging with both Student and his family.

17. In sum, the collective testimony of the witnesses and exhibits presented at the due process hearings established the following:

   a. Student was not denied FAPE during the applicable period of November 2022 through November 2024;

   b. Throughout Student's matriculation, Lab Charter was fully responsive to his needs and Parent's requests;

   c. Parent's complaints of dilatory actions by Lab Charter were not supported by any evidence and are contradicted by the submitted evidence;

    d. Parent's testimony was not credible and cannot be accepted in light of her suggestion that she had documents to support her contentions that she gave to counsel that were in turn never marked as Exhibits nor submitted on the record;

    e. No proof has been submitted that the prospective relief requested is necessary or supported by any evidence and was reliant on the Hearing Officer acting as an educational expert in reaching his Decision;

    f. Parent has not proven any basis for an award of compensatory education credits based on the required qualitative analysis mandated by the Courts of the Third Circuit;

    g. Parent has not presented any factual proof or expert testimony to support her claim that Lab Charter should be ordered to transfer Student to another, more restrictive educational environment for evaluation or otherwise;

    h. The decision requirement of a 100 day classroom based evaluation was not requested by the Parent, not supported by the evidence and only based on the Hearing Officer acting as the missing expert witness and the Hearing Officer often citing to portions of the record or submissions do not support his Decision; and

    i. The Hearing Officer cites to portions of the record or submissions by the parties that do not support his decision.

### III. Legal Principles

#### A. Burden of Proof

18. The burden of proof consists of two elements: the burden of production and the burden of persuasion. At the outset, it is essential to recognize that the burden of persuasion lies with the party seeking relief. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *L.E. v. Ramsey Board of Education*, 435 F.3d 384, 392 (3d Cir. 2006).

19. Accordingly, the burden of persuasion rests with the Parent, who requested this hearing, while the burden of production rests with the School. In IDEA and Section 504 disputes, the hearing officer applies a preponderance of proof standard. *Jaffess v. Council Rock Sch. Dist.*, 2006 EL 3097939 (E.D. Pa. Oct. 26, 2008).

20. The Parent must therefore produce a quantity or quality of evidence that is greater than that produced by Lab Charter. *Comm v. Williams*, 532 Pa. 264, 284-86 (1992).

21. Simply stated, in the present matter, the Parent who filed the Complaint has the burden of persuasion to prove by a preponderance of the evidence that Lab Charter failed to offer and provide FAPE to Student.

22. However, as reflected in the statement of material facts above, it is respectfully asserted that Parent did not meet her requisite burden of proof to support the claims made by her in any respect and her requests for a finding of a denial of FAPE.

23. Parent failed to establish that Lab Charter has substantially denied FAPE to Student. To the contrary, all evidence and proof from the record indicate that Lab Charter properly sought Student out as a child with special education needs and provided programming for him in general education and special education settings. Lab Charter also provided Parent with the opportunity to participate in the decision-making process.

24. There was thus no evidence that Lab Charter caused a deprivation of educational benefit, Parent did not meet her burden of proof, and the Hearing Officer's finding of denial of FAPE must be reversed.

### B. The Child Find Requirement and FAPE

25. Under the IDEA, "schools must (1) identify children in need of special education services (Child Find); and (2) provide a [free appropriate public education ("FAPE")] to disabled students." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012).

26. To hold a school liable for violations of the IDEA, a student must typically show that the school violated both its Child Find and FAPE obligations to be held liable under the IDEA, *i.e.* there can be no IDEA violation without specific substantive harm to the student's

education. *See, e.g., C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (*citing Bd. of Educ. of Hendrick Hudson Ctrl. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982); *Knable ex rel. Knable v. Bexley City Sch. Dis.*, 238 F.3d 755, 765 (6th Cir. 2001)); *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565-66 (3d Cir. 2010).

27. To comply with the IDEA's "child find" requirements, schools "must promptly identify [sic] disabled students 'who are in need of special education.'" *Northfield City Bd. of Educ. v. K.S., on behalf of L.S.*, 847 Fed.Appx. 130, 133 (3d Cir. 2021) (*quoting* 20 U.S.C. § 1412(a)(3)(A)). After the school is put on notice of a student's potential disability, it must evaluate that student "within a reasonable time." *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Schs.*, 486 F.3d at 272.

28. But some disabilities are hard to diagnose, so the school's actions need only be reasonable based on what it knew at the time – they need not rush to judgment. *Northfield*, 847 Fed.Appx. at 133; *D.K.*, 696 F.3d at 252.

29. Instead, they can and should "take intermediate steps 'en route to eventually finding a disability.'" *Northfield*, 847 Fed.Appx. at 133 (*citing D.K.*, 696 F.3d at 252).

30. Once a school determines a child requires special education, the IDEA requires that the school provide them with FAPE: "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188-89.

31. The "educational program [must be] reasonably calculated to enable the child to make progress appropriate in light of his circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. REI-1*, 580 U.S. 386, 403 (2017) (emphasis supplied). Here the School

demonstrated that the Student made reasonable progress that in part was shown by good grades and behavioral advances.

32. When a hearing officer evaluates a student's educational program, he or she may not rely on hindsight to second-guess it. Rather, it must rely on the information available to the school at the time the program was developed. *K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 255 (3d Cir. 2019).

33. Moreover, schools are not required to provide the best education possible to disabled students, but rather must simply provide the basic floor of educational opportunity. *Ridley Sch. Dist. v. M.R. and J.R. ex rel. E.R.*, 680 F.3d 260 (3d Cir. 2012); *D.S.*, 602 F.3d at 260; *Mary Courtney T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 251 (3d Cir. 2009).

34. The program must only be reasonable; it need not be ideal. *KD by Dunn*, 904 F.3d at 249. Indeed, the Third Circuit has explicitly ruled that "so long as [the student's education] responds to the needs [of the student], its ultimate success or failure cannot retroactively render it inappropriate." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 534 (3d Cir. 1995).

35. A hearing officer may, however, use evidence of educational progress as evidence that the education provided to the student was appropriate. *See Katheryn F. v. West Chester Area Sch. Dis.*, 2013 WL 6667773 (E.D. Pa. Dec. 18, 2013). Here, the Hearing Officer denied the progress reported by the witnesses and the achievement of excellent grades in each of the subject matters throughout the relevant periods.

### C. Procedural and Substantive Violations of IDEA

36. A school's violation of the IDEA can be procedural or substantive. A procedural violation only occurs when a school fails to substantially comply with the IDEA's process-based requirements and timelines.

37. On the other hand, a substantive violation occurs when the substantive content of the Students' education at programming or the IEP is insufficient and doesn't provide the student with FAPE.

### i. Procedural Violations

38. A procedural violation occurs when a district fails to abide by the IDEA's process-based requirements, procedural safeguards, and timeline requirements and is not a per se denial of FAPE; it is a denial of FAPE only if such violation <u>causes substantial educational or behavioral harm</u> to the child or his parents. *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001). Furthermore, a procedural violation of the IDEA "must actually interfere with a provision of FAPE." *DiBuo v. Bd. of Educ.*, 309 F.3d 184, 190 (4th Cir. 2002).

39. "The remedy of compensatory education is available only where a student's substantive rights are affected by a school district's noncompliance with the IDEA." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012).

40. Substantive harm can only be found where the preponderance of the evidence in the record indicates that the procedural inadequacies alleged by the student: (1) impeded the student's right to FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of FAPE to the parent's child; or (3) caused a deprivation of educational benefit. 34 C.F.R. § 300.513(a)(2); *see also Rodrigues v. Fort Lee Bd. of Educ.*, 458 Fed.Appx. 124, 127 (3d Cir. 2011) (finding a lack of measurable goals in an IEP was a procedural error that did not affect the student's substantive rights or deny a FAPE where the student was mainstreamed and progress was measured by grades and state proficiency assessments; the court found no IDEA violation); *N.M. ex rel. M.M. v. Sch. Dist. of Philadelphia*, 394 Fed.Appx. 920, 923 (3d Cir. 2010) (finding that IEP lacking annual goals relating to

student's needs stemming from his disability was not a procedural flaw giving rise to a substantive harm because the school still provided FAPE).

41. Where, as here, a school provides additional educational supports during a reasonable evaluation period, and the student's academic performance continues to improve, there is no basis for a finding of denial of FAPE. *See, e.g., J.M. v. Summit Bd. of Educ.*, 2020 WL 6281719, at *10-11 (E.D. Pa. Oct. 27, 2020); *D.K.*, 696 F.3d at 252 (school did not fail to identify student as disabled when it offered him additional educational services "en route to eventually finding a disability"); *Ridley Sch. Dist.*, 680 F.3d at 272 (affirming administrative decision that there was no child find violation when the school "address[ed] [the student's] needs and provid[ed] appropriate instruction and interventions before rushing to special education identification"); *Robinson v. Council Rock Sch. Dist.*, 2006 WL 1983180, at *6 (E.D. Pa. July 12, 2006) (school district did not violate IDEA by not providing more expansive accommodations where standardized test scores indicated student was receiving meaningful educational benefit); *see also Jaffess v. Council Rock Sch. Dist.*, 2006 WL 2097939, at *7 (E.D. Pa. Oct. 26, 2006) ("even assuming [the student] suffers some level of learning disability, the evidence fails to establish that such disability interferes [with the student's] ability to benefit meaningfully from an educational program without [specially designed instruction]").

### ii. Substantive Violations

42. A substantive violation occurs when the substantive content, such as the educational programming or the IEP is insufficient and doesn't provide the student with FAPE, or when programming is not "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel Joseph F. v. Douglas Cty. Sch. Dist. REI-1*, 137 S.Ct. 1001 (2017).

43. The IDEA does not guarantee "the absolute best" or a "potential-maximizing" education, only that the student is provided with a meaningful educational benefit. *Fuhrmann on Behalf of Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1043 (3d Cir. 1993) (recognizing that IDEA does not entitle a child to the best education available, but only one reasonably calculated to provide him or her with a meaningful educational benefit). Therefore, as *Endrew* and *Rowley* make clear, the proposed programming must respond to the child's unique educational needs and individual circumstances. *See* 20 U.S.C. § 1414(d); 34 C.F.R. § 300.324.

44. An award of compensatory education is only appropriate where a student's substantive rights are affected by a school's non-compliance with the IDEA. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012). Where a student's reports cards "indicated intermittent progress and even academic success in several areas," the Third Circuit has found no substantive violation. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 251 (3d Cir. 2012).

45. In this case, Parent has wholly failed to produce any evidence to support her contentions that Lab Charter substantially violated IDEA in a way that prevented Student from receiving meaningful educational benefit. To the contrary, his grades and educational testing during the applicable time period evidenced that he was making regular progress in all academic subjects. Moreover, the comparison tables attached to the Hearing Officer's decision were just another example of the Hearing Officer acting as an expert without the benefit of proper expert testimony offered by the parent regarding procedural or substantive violations.

### D. Compensatory Education

46. In *B.C.*, the Commonwealth Court of Pennsylvania was persuaded by the Ninth and D.C. Circuits' standard "as it tailors to the equitable award of compensatory education to the particular student's needs." *Id.* at 650. The Court held that, after a finding of a denial of FAPE

and meaningful education, "the student is entitled to an amount of compensatory education reasonably calculated to bring him to the position that he would have occupied but for the school district's failure to provide a FAPE. *Brownsville Area Sch. Dist. v. Student X*, 729 A.2d 198 (Pa. Commw. 1999).

47. Compensatory education is designed "to fairly compensate the student whose school district failed to provide the student a free appropriate public education," *Id.* at 200, and thus, "a disabled child is entitled to compensatory education for a period equal to the period of deprivation." *M.C. v. Central Regional Sch. Dist.*, 81 F.3d 389 (3d Cir. 1996).

48. However, compensatory education is an equitable remedy, which gives discretionary flexibility to the Court in tailoring a particularized award based on the facts and equities of the case. *See Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994) (no obligation to provide a day-for-day compensation for time missed).

49. As the Third Circuit articulated, compensatory education is an equitable remedy designed to replace the educational services a disabled child should have received pursuant to a FAPE, *see Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990), and must therefore "aim to place [the] disabled [student] in the same position [he] would have occupied but for the school district's violation of [the] IDEA." *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010). A simple, mechanical, one-for-one approach would fall short of achieving this goal. *Id.*

50. Moreover, an award of compensatory education should be based on the amount of services necessary to provide the same qualitative educational benefit the student would have received during the period of deprivation absent the school district's deficiencies. *Heather D. v. Northampton Area Sch. Dist.*, 511 F.Supp.2d 549, 557-59 (E.D. Pa. 2007) (stating that an award

of a full year of compensatory education for each year at issue was not warranted because the student's needs did not pervade her entire school day).

51. In addition, several courts have interpreted this language as requiring a more particularized award calculated based upon the quantity of services improperly withheld during the period of deprivation, less the reasonable amount of time in which the school district should have addressed the deficiency. *See, e.g., Breanne C. v. Southern York Cnty. Sch. Dist.*, 732 F.Supp.2d 474, 487-88 (M.D. Pa. 2010) (affirming appeals panel's award of one hour of compensatory education per day for the period of deprivation based on a prior IEP under which the student had been making progress); *Neena S. ex rel. Robert S. v. Sch. Dist. of Phila.*, 2008 WL 5273546, at *7 (E.D. Pa. Dec. 19, 2008) (awarding one hour per day for each subject area in which the student lacked meaningful progress during the period of deprivation); *Heather D. v. Northampton Area Sch. Dist.*, 511 F.Supp.2d 549, 557-59 (E.D. Pa. 2007) (affirming appeals panel's award of ten hours per week for period of deprivation based on recommendation of neuropsychologist).

52. In this matter, Student suffered no apparent educational loss, and thus, he should not be entitled to receive any compensatory award from the School, and HO Jelley's decision awarding him the same should be reversed.

### IV. Conclusion

53. Based upon the record established at the administrative record, including all exhibits and witness testimony that will ultimately be transmitted to this Court, it is respectfully urged that the hearing Officer's April 30, 2025 Decision must be reversed, and this Court should instead make the following legal findings:

    a. Lab Charter did not deny Student FAPE during the relevant two-year period between November 26, 2022 and November 26, 2024;

b.  Even if a procedural violation occurred during that relevant two-year period, Student was not educationally harmed by any such procedural error as reflected in his grades during the applicable period and the testing demonstrating regular progress in all educational efforts;

c.  Lab Charter has satisfied the need for any award of prospective relief by ordering and completing all of the requests for further testing;

d.  No award of compensatory education is appropriate and unsupported by the evidence because any such award could only be given based on a qualitative analysis not pled, requested, or proven by Parent; and

e.  A change of educational environment has not been supported by any evidence and must be rejected because such a transfer to a school with more restrictive environments is not supported by any evidence or expert testimony.

Respectfully Submitted,

SPECTOR GADON ROSEN VINCI, P.C.

By: *Alan B. Epstein*

1635 Market Street, Seventh Floor
Philadelphia, PA  19103
(215) 241-8832
aepstein@sgrvlaw.com
*Attorney for the Laboratory Charter School*

Date: May 19, 2025