**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LABORATORY CHARTER SCHOOL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-2524** |
| | : | |
| **AM** | : | |

## MEMORANDUM

**KEARNEY, J.**                                            **January 23, 2026**

The mother of a grade school student facing educational challenges due to diagnosed autism spectrum and attention deficit hyperactivity disorders challenged the grade school's individualized education plan for her child's third, fourth, and fifth grade years and claimed the school did not provide her child with a Congressionally-mandated free appropriate public education. The mother and child presented their evidence to a hearing officer who made detailed findings. The officer, relying on his credibility findings after evaluating witnesses in three hearings, found the school procedurally and substantively violated the Individuals with Disabilities Education Act and denied the student a free appropriate public education. The officer awarded the student (1) an independent educational evaluation, (2) a one-hundred-day diagnostic placement, (3) retrospective compensatory education for two school years, (4) prospective compensatory education for a third school year and until the school issues a new individualized education plan after reviewing the independent educational evaluation, and (5) compensatory education for the 2023, 2024, and 2025 extended school years.

The school now asks us to vacate and reverse the officer's decision. It argues it complied with the Act's procedural requirements and provided a free appropriate public education. We must now review the officer's findings under a modified de novo standard of review and review his awarded relief under a de novo standard of review. Our study of the administrative record confirms

the detailed and well-reasoned basis for the officer's decision. We deny the school's motion for judgment on the administrative record.

### I. Hearing Officer's findings and background from the administrative record.

Pre-teen AM has attended Laboratory Charter School since first grade during the 2019–20 school year.[1] Providers diagnosed him with attention deficit hyperactivity disorder and autism.[2] AM had virtual classes during his first-grade year and then advanced to second grade.[3]

Lab Charter challenges several aspects of a hearing officer's findings. We first focus on the Hearing Officer's findings before addressing the challenges.

### *2020–21 second-grade year.*

Lab Charter continued to offer virtual classes to AM as a second-grade student during the 2020–21 school year.[4] AM's mother KB became concerned about his academic and social progress and requested Lab Charter evaluate him to determine his eligibility for special education services in October 2020.[5] Lab Charter finished evaluating AM on December 22, 2020.[6]

The evaluation showed AM received low scores or inconclusive results in several academic and developmental areas.[7] AM scored in the "[l]ow range" for math and the "below average" range for reading on one test.[8] These results showed AM "lacked . . . necessary fundamental academic skills."[9] Another test showed AM to be "two years behind [his] peers" in math, reading, and English and Language Arts.[10] Lab Charter did not evaluate AM's "language skills or sensory processing skills."[11]

Lab Charter then developed an individualized education plan for him on February 3, 2021.[12] The Plan "did not identify executive functioning, social communication, or written expression" as among AM's educational needs.[13] Mother KB asked for AM to repeat second grade at the end of the 2020–21 school year and Lab Charter agreed.[14]

### *2021–22 repeat second-grade year.*

Lab Charter continued with the February 2021 Plan at the start of AM's repeat second-grade year during the 2021–22 school year. Lab Charter did not fully implement the February 2021 Plan.[15] For example, even though the Plan called for AM to spend 22% of each school day outside of the general education classroom, Lab Charter only provided him with "pull-out" support on a handful of days across October and November 2021.[16] Lab Charter issued progress reports on AM which did not show math progress and which described AM as an "above average reader" even though assessments showed AM performed below his grade level.[17]

Lab Charter issued a new Plan for AM on February 1, 2022 during his repeat second grade year.[18] This February 2022 Plan appeared "substantially similar" to his February 2021 Plan even though AM's progress reports did not show advancements in areas like math.[19]

### *2022–23 third-grade year.*

AM entered third grade during the 2022–23 school year.[20] Lab Charter's reports on his progress under the February 2022 Plan show AM's math skills declined through this school year.[21] A November 2022 report shows AM could add and subtract single- and double-digit numbers with "90% accuracy" while a March 2023 report shows AM could only correctly answer addition and subtraction problems "50% of the time."[22]

Lab Charter issued another annual Plan for AM on January 30, 2023.[23] The January 2023 Plan had several issues too.[24] For example, the Plan reported AM "was defiant, eloped, and became frustrated when given nonpreferred tasks" but still "did not include a positive behavior plan" for AM.[25] The Plan also continued to use "identical, generic [specially designed instruction] that had been implemented during the repeat of [second] grade."[26] It decreased AM's special education

allotment to 21% of the school day.[27] AM also arrived late to school and returned home late despite Lab Charter agreeing to provide him with curb-to-curb transportation.[28]

### *2023–24 fourth-grade year.*

AM entered fourth grade in the 2023–24 school year. Lab Charter again "failed to consistently provide [him] Learning Support services or . . . counseling sessions" during the fourth-grade year.[29]

Lab Charter also completed a "triennial reevaluation" for AM on December 7, 2023.[30] KB asked Lab Charter during the triennial reevaluation to consider whether it could treat AM as a student with autism.[31] KB and two of AM's teachers rated AM on the Autism Spectrum Rating Scale.[32] All of AM's total scores on the scale placed him in the "Very Elevated" range for autism traits.[33] But Lab Charter concluded AM's attention deficit hyperactivity disorder caused his behavioral struggles and concluded his current "disability category" was sufficient.[34] The report failed to recommend responses to AM's behavioral struggles.[35] The reevaluation report also showed AM's standardized academic achievement scores in twelve areas were "Well Below Average" or "Significantly Below Average."[36] The December 2023 reevaluation showed AM fell "further behind [his] regular education peers" compared to the December 2020 initial evaluation.[37]

After the triennial reevaluation Lab Charter issued another annual Plan for AM on February 8, 2024.[38] The Plan "failed to address all of [AM's] areas of need."[39] For example, the Plan "did not include any support or accommodations for [AM's] identified needs in organization, attention, emotional regulation, language, sensory processing, or behavior."[40] KB then had a third-party—the Center for Autism—evaluate AM for autism in March 2024.[41] The Center for Autism diagnosed AM with autism spectrum disorder on March 8, 2024.[42] KB sent Lab Charter the Center

for Autism's report but Lab Charter did not revise AM's Plan during his fourth-grade year.[43] AM continued to arrive late for school because of issues with Lab Charter's transportation.[44]

### 2024–25 fifth-grade year.

AM entered fifth grade in the 2024–25 school year. Lab Charter did not revise his Plan to respond to his autism diagnosis until August 2024.[45] When Lab Charter did revise the Plan it still did not include autism as a "primary or secondary disability."[46] AM spent the first months of his fifth-grade year "in a general education setting with minimal pull-out academic support and no programming or interventions for identified needs in social communication, social skills, study skills, organization, attention, executive functioning, sensory processing, emotional regulation, and behaviors."[47]

### KB requests records from Lab Charter and files an administrative Complaint.

KB requested AM's educational records under the Family Educational Rights and Privacy Act at the start of AM's fourth-grade year on August 15, 2023.[48] Lab Charter took six months to respond to KB's records requests.[49] KB then filed a due process complaint on AM's behalf on November 26, 2024.[50] She claimed Lab Charter failed to provide AM with a free appropriate public education "from November 26, 2022 through the date of the Hearing Officer's decision" and asked for an independent educational evaluation for AM, for compensatory education, and for Lab Charter to provide him with a free appropriate public education as relief.[51]

### Hearing Officer Jelley holds hearings and issues findings.

Hearing Officer Jelley held an administrative hearing to resolve AM's claims on January 22, 2025, February 10, 2025, and February 25, 2025.[52] KB and Lab Charter staff members and contractors testified.[53] Hearing Officer Jelley determined Lab Charter's staff were not credible because they "could not answer basic questions or explain the lack of record keeping, progress

monitoring, [extended school year] eligibility determination process, grading, child find policy, or how they implemented the [Plans]."[54] He instead credited KB's testimony because she "was clear, articulate, and detailed."[55]

Hearing Officer Jelley found Lab Charter procedurally and substantively violated the Individuals with Disabilities Education Act and denied AM a free appropriate public education.[56] He found Lab Charter violated the Act and denied AM a free appropriate public education in part because it (1) continued to "repeat[]" and "recycle[]" Plan goals even though testing showed AM's "persistent academic stagnation[,]" (2) did not identify interventions for AM's executive functioning deficits or "implement a Positive Behavior Support Plan[,]" (3) did not "timely consider[]" AM's autism-related needs even though testing showed AM had "Very Elevated" autism traits during the 2023–24 school year, (4) continued to educate AM in the regular education classroom despite testing and teachers confirming AM performed below grade level, (5) failed to timely produce AM's educational records after KB requested them in August 2023, and (6) failed to respond to KB's request for an independent educational evaluation.[57]

Hearing Officer Jelley awarded AM (1) an independent educational evaluation, (2) a one-hundred-day diagnostic placement, (3) retrospective compensatory education for the full 2022–23 and 2023–24 school years, (4) prospective compensatory education for the 2024–25 school year and until Lab Charter issues a new Plan after reviewing the independent educational evaluation, and (5) compensatory education for the 2023, 2024, and 2025 extended school years.[58]

## II.    Analysis

Lab Charter moves for judgment on the administrative record.[59] It asks us to reverse Hearing Officer Jelley's decision. It argues it complied with Congress's procedural requirements under the Act and provided AM with a free appropriate public education.[60] It also asks us to vacate

the relief.[61] AM opposes Lab Charter's motion.[62] Our review of the administrative record confirms it supports Hearing Officer Jelley's decision. We deny Lab Charter's motion.

### A. Hearing Officer Jelley properly found Lab Charter violated the Act and denied AM a free appropriate public education.

Lab Charter asks us to reverse Hearing Officer Jelley arguing we should find it complied with Congress's procedural and substantive requirements.[63] We find Lab Charter has not met its burden to reverse and vacate Hearing Officer Jelley's findings.

Congress through the Individuals with Disabilities Education Act requires states to provide children with disabilities with a "free appropriate public education" in exchange for federal funding.[64] School districts can provide free appropriate public educations through an individualized education plan for each student with special education needs.[65] An individualized education plan "consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services."[66] A team reviews each individualized education plan at least once a year to determine "whether the stated goals for the student are being achieved."[67] The team must revise an individualized education plan as needed "to address . . . lack of progress, necessary changes arising from reevaluation of the child, and parental input."[68]

For a school's individualized education plan to be adequate and to provide a student with a free appropriate public education the school must 1) "compl[y] with the [Act's] procedural requirements" and (2) ensure it "reasonably calculated" the Plan "to enable the child to receive educational benefits."[69] Whether a school fulfilled its obligation to provide a free appropriate

public education is a "question[] of fact."[70] As "the party challenging the administrative decision" Lab Charter "bears the burden of persuasion . . . as to each claim challenged."[71]

Lab Charter has not carried its burden on its challenges to Hearing Officer Jelley's factual findings. We agree with Hearing Officer Jelley's finding Lab Charter violated the Act's procedural requirements. And we agree with Hearing Officer Jelley's finding Lab Charter failed to provide AM with a free appropriate public education during the 2022–23, 2023–24, and 2024–25 school years.

### a.  Lab Charter violated the Act's procedural requirements.

Lab Charter asks us to reverse Hearing Officer Jelley's procedural violation findings.[72] It argues it did not violate the Act's procedural requirements and even if it did the violations did not cause substantive harm to AM.[73] AM responds the record supports Hearing Officer Jelley's finding Lab Charter committed procedural violations contributing to its denying AM a free appropriate public education.[74] We agree with Lab Charter.

A school must comply with the Act's procedural requirements.[75] For example, Congress requires schools to allow parents to review their children's educational records.[76] But relief is only available for procedural violations of the Act if the procedural violations "result[] in a loss of educational opportunity for the student, seriously deprive[] parents of their participation rights, or cause[] a deprivation of educational benefits."[77]

Hearing Officer Jelley found Lab Charter violated the Act's procedural requirements by, for example, taking over one hundred ninety days to produce AM's records after KB requested them and failing to keep full records on AM's progress.[78] He determined the violations "prejudic[ed] [KB's] ability to participate meaningfully" in the Plan development process and "made it difficult to calculate the nature and the extent of [AM's] learning loss."[79] He also found

Lab Charter violated the Act's procedural requirements when it failed to respond to KB's request for an independent educational evaluation for AM.[80]

Lab Charter cites to (1) discredited hearing testimony from Hillary El—Lab Charter's Special Education Director—about a written notice to evaluate issued in January 2025, the reevaluation report dated February 2025, and a 2025 Plan meeting, (2) the February 2022 Plan, and (3) the February 2024 Plan updated in August 2024 to support its claim it did not violate the Act's procedural requirements.[81] The cited materials do not rebut Hearing Officer Jelley's conclusion Lab Charter did not timely produce AM's educational records or keep complete records.

Lab Charter also cites to several materials to support its claim any procedural violation it may have committed did not deprive AM of educational benefits including (1) KB's testimony about transportation issues, (2) discredited testimony from Ms. El stating she does not know why Lab Charter took six months to respond to KB's record requests, does not know whether Lab Charter sent the February 2024 and August 2024 Plan to KB, and does not know why Lab Charter did not draft a notice of recommended educational placement after updating AM's Plan in August 2024, (3) discredited testimony from Patrina Stewart—Lab Charter's individualized education plan case manager for fourth and fifth grades—about her perception of AM's instructional, comprehension, and expression levels during his fourth-grade year, and (4) discredited testimony from Thurayya Berry-Petteway—a Lab Charter school psychologist for the 2023–24 year—about her perception of whether Lab Charter responded to AM's anger during his fourth-grade year.[82] These cited materials also do not rebut Hearing Officer Jelley's conclusion Lab Charter's

procedural failures contributed to denying AM educational benefits. Lab Charter has not met its burden and we deny its motion on this ground.[83]

### b. Lab Charter violated the Act's substantive requirements and denied AM a free appropriate public education.

Lab Charter also asks us to reverse Hearing Officer Jelley's finding it denied AM a free appropriate public education and argues the administrative record shows it "consistently offered and implemented [Plans] that were individualized to AM's needs, data-driven based on evaluation and input from teachers and [KB], and demonstrably effective in addressing AM's educational needs."[84] AM responds Hearing Officer Jelley's factual findings and the administrative record show Lab Charter denied AM a free appropriate public education.[85] We agree with AM.

Congress requires schools to provide students with a free appropriate public education.[86] Schools can provide students with a free appropriate public education through Plans "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[87] A student usually makes appropriate progress under the Act where the child receives "passing marks" sufficient to allow the child to "advance from grade to grade."[88] But just because a student is advancing from grade to grade does not mean the Plan is reasonable or a student is receiving a free appropriate public education.[89] And just because a Plan ultimately does not support the child in achieving his goals does not mean the Plan was unreasonable when the school designed it.[90] We instead must determine whether a child has a Plan reasonably calculated to allow him to make progress on a case-by-case basis.[91] Whether a Plan is reasonably calculated to allow a child to make progress and "is appropriate is a question of fact."[92] We thus defer to Hearing Officer Jelley's

factual findings and credibility determinations "unless countered by non-testimonial evidence on the record."[93]

Hearing Officer Jelley concluded Lab Charter's Plans for AM were not appropriate and did not provide him with a free appropriate public education. He noted Lab Charter's February 2021 Plan for AM did not address AM's difficulties with executive functioning, processing speed, and written language development despite the December 2020 Evaluation Report showing his weaknesses in these areas.[94] He also noted Lab Charter's progress reports on AM showed he did not progress in other areas of identified weakness like math.[95] He determined Lab Charter issued "a cascading pattern of flawed" Plans in 2022, 2023, and 2024 because they "substantially repeated the 2021 [Plan] without accounting for [AM's] lack of progress or learning and omitted program[s] for recognized needs" and because Lab Charter "continued to educate [AM] in the regular classroom without significant curriculum changes."[96] Hearing Officer Jelley rejected Lab Charter's argument AM's grade advancement showed meaningful progress because his evaluations and test results did not show progress.[97]

Lab Charter generally cites to the February 2022, January 2023, February 2024, and August 2024 Plans and claims they show the Plans "built upon current evaluative data" and were "responsive to teacher and Parent input."[98] It also cites to individualized education plan case manager testimony at the administrative hearing to show AM progressed in "reading fluency, comprehension, and math computation accuracy."[99] But Hearing Officer Jelley discredited Lab Charter's staff testimony because they "could not answer basic questions or explain the lack of record keeping, progress monitoring, [extended school year] eligibility determination process, grading, child find policy, or how they implemented the [Plans]."[100] And the administrative record

supports Hearing Officer Jelley's conclusions AM did not progress and the Plans did not address all of his areas of difficulty.

Hearing Officer Jelley provided reasons—such as the similarities of the Plans each year despite AM's lack of progress—with supporting citations to the record to make the factual finding Lab Charter denied AM a free appropriate public education during the 2022–23, 2023–24, and 2024–25 school years.[101] We defer to Hearing Officer Jelley's credibility determinations. Lab Charter has not identified evidence in the record countering Hearing Officer Jelley's credibility determinations or showing Hearing Officer Jelley's conclusions about AM's test results and progress are erroneous. We defer to Hearing Officer Jelley's conclusions and deny Lab Charter's motion on this ground.[102]

### B.  Hearing Officer Jelley properly awarded AM relief.

Lab Charter asks us to vacate the relief Hearing Officer Jelley awarded AM.[103] But Lab Charter only argues the compensatory education and diagnostic placement awards are improper.[104] AM argues Hearing Officer Jelley awarded him appropriate relief.[105] We agree with AM.

#### a.  Hearing Officer Jelley's compensatory education award is appropriate.

Lab Charter asks us to vacate Hearing Officer Jelley's compensatory education award and argues it is inappropriate because AM received an educational benefit from his general education courses.[106] Lab Charter also argues a portion of the compensatory education award is "moot" and another is barred by the Act's statute of limitations.[107] AM responds the administrative record supports Hearing Officer Jelley's compensatory education award.[108] We review Hearing Officer Jelley's compensatory education award de novo and agree with AM.[109]

Compensatory education is a remedy available when a school fails to provide a student with an appropriate education.[110] A student's "right to compensatory education accrues when the

school knows or should know that the student is receiving an inappropriate education."[111] We may award compensatory education "to whatever extent necessary to make up for the child's lost progress and to restore the child to the educational path he or she would have traveled but for the deprivation."[112] And remedies under the Act like compensatory education are not subject to the Act's statute of limitations.[113] But a child is not entitled to compensatory education during "the time reasonably required for the school district to rectify the problem."[114]

Hearing Officer Jelley found the administrative record showed Lab Charter knew or should have known it denied AM a free appropriate public education beginning with the 2022–23 school year.[115] He also noted Lab Charter did not raise a reasonable rectification period defense at the administrative hearing and determined the Act's statute of limitations does not cap retrospective compensatory education where a parent timely filed a complaint.[116] He thus awarded 6.5 hours of compensatory education per school day—less school days missed because of illness—for the 2022–23, 2023–24, and 2024–25 school years and for the 2023, 2024, and 2025 extended school years.[117]

Lab Charter's argument against Hearing Officer Jelley's compensatory education award focuses on challenging his underlying factual finding Lab Charter denied AM a free appropriate public education during the 2022–23, 2023–24, and 2024–25 school years.[118] But the record supports Hearing Officer Jelley's finding Lab Charter denied AM a free appropriate public education during the 2022–23, 2023–24, and 2024–25 school years. The portions of the record Lab Charter cites—individualized education plan case manager and school psychologist testimony which Hearing Officer Jelley discredited, an oral reading fluency assessment from his fifth-grade year, and his February 2024 Plan showing progress in language arts and reading but not in math—

13

do not show Hearing Officer Jelley erred in finding Lab Charter denied AM an appropriate education.[119]

Lab Charter also did not support its argument Hearing Officer Jelley's compensatory education award is moot. Hearing Officer Jelley ordered compensatory education would continue to accrue until (1) AM completes his one-hundred-day diagnostic placement and (2) Lab Charter offers AM a new Plan and a notice of recommended educational placement.[120] Lab Charter argues the prospective compensatory education award is moot because it "already conducted updated speech and language, occupational therapy, and functional behavioral assessments" and "implemented a revised August 2024 [Plan] addressing AM's areas of need."[121] But it does not assert AM completed his one-hundred-day diagnostic placement.[122] And it does not otherwise cite case law to support its position.[123] Hearing Officer Jelley also correctly determined the Act does not cap retrospective compensatory education where a parent timely filed a complaint.[124] We find Hearing Officer Jelley's decision to award compensatory education for 6.5 hours per school day is appropriate.[125] We deny Lab Charter's motion on this ground.

### b. Hearing Officer Jelley's one-hundred-day diagnostic placement award is appropriate.

Lab Charter argues KB requested and Hearing Office Jelley awarded an "autism-exclusive placement" for AM and asks us to vacate it as violating the Act's "least restrictive environment" requirement.[126] AM responds Hearing Officer Jelley did not award AM with an autism-exclusive placement and instead only ordered a one-hundred-day diagnostic placement for him.[127] We agree with AM.

Congress through the Act requires schools to place children with disabilities "in the least restrictive environment . . . that will provide [them] with a meaningful educational benefit."[128] A child's least restrictive educational environment is one which "satisfactorily educates" the child

"together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled."[129] Lab Charter does not cite authority showing a temporary diagnostic placement can violate the Act's least restrictive environment requirement.[130] We deny its motion on this ground.[131]

### III.    Conclusion

Lab Charter did not meet its burden to show Hearing Officer Jelley erred in concluding Lab Charter procedurally and substantively violated the Act and denied AM a free appropriate public education. And we find Hearing Officer Jelley did not err in awarding AM relief based on these violations. We deny Lab Charter's motion for judgment on the administrative record.

---

[1] *See* ECF 27-2 at 195, Appx. at AR0692, Decision at 3 ¶¶ 1–2.

[2] *See id.* at 3 ¶ 3.

[3] *Cf. id.* 3 ¶ 2.

[4] *See id.*

[5] *See* ECF 27-2 at 195–96, Appx. at AR0692–93, Decision at 3–4 ¶ 5.

[6] *See* ECF 27-2 at 196, Appx. at AR0693, Decision at 4 ¶ 6.

[7] *See id.* at 4 ¶ 7 (finding AM's "Wechsler Intelligence Scales for Children, 5th Edition" might have been inaccurate); *id.* at 4 ¶ 9 (finding AM's "Wechsler Individual Achievement Test, Third Edition" scores in "Overall Math, Math Fluency, Computation, and Problem-Solving were all in the Low range" and his scores in "Early Reading, Word Reading, and Sentence Repetition were all in the Below Average Range" which "indicates that [AM] lacked the necessary fundamental academic skills"); *id.* (finding AM's "Exact Path Kindergarten" scores "in math, Reading, and English and Language Arts . . . plac[ed] [AM] two years behind [his] peers*"); id.* at 4 ¶ 10 (finding AM's parent and teacher completed the "Behavior Assessment Scales for Children, Third Edition" and asserted he "had difficulty adapting to change, took longer to recover, and demonstrated significant attention problems"); *id.* at 4–5 ¶ 11 (finding AM's "Conners-3" ratings also suggested issues with "Peer Relations, Executive Functioning, and Learning Problems" as well as with "inattention").

[8] *See* ECF 27-2 at 196, Appx. at AR0693, Decision at 4 ¶ 9 (finding AM's "Wechsler Individual Achievement Test, Third Edition" scores in "Overall Math, Math Fluency, Computation, and

Problem-Solving were all in the Low range" and his scores in "Early Reading, Word Reading, and Sentence Repetition were all in the Below Average Range" which "indicates that [AM] lacked the necessary fundamental academic skills").

[9] *See id.*

[10] *See id.*

[11] *See id.* at 4 ¶ 8.

[12] *See* ECF 27-2 at 197, Appx. at AR0694, Decision at 5 ¶ 12.

Individualized education plans are intended to give a student with special needs access to an appropriate education by identifying "a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (quoting *Holmes v. Millcreek Twp. Sch Dist.*, 205 F.3d 583, 589 (3d Cir. 2000)).

[13] *See* ECF 27-2 at 197–98, Appx. at AR0694–95, Decision at 5–6 ¶ 15.

[14] *See* ECF 27-2 at 198, Appx. at AR0695, Decision at 6 ¶ 21.

[15] *See id.* at 6 ¶ 17 (showing the Hearing Officer found AM "did not receive the counseling sessions" his Plan required during the 2021–22 school year).

[16] *See* ECF 27-2 at 197–98, Appx. at AR0694–95, Decision at 5–6 ¶¶ 14, 17; *see also* ECF 27 at 97–102, Appx. at AR0093–98.

[17] *See* ECF 27-2 at 198, Appx. at AR0695, Decision at 6 ¶¶ 18–20.

[18] *See* ECF 27-2 at 199, Appx. at AR0696, Decision at 7 ¶ 23.

[19] *See* ECF 27-2 at 198–99, Appx. at AR0695–96, Decision at 6–7 ¶¶ 18, 20, 23.

[20] *See* ECF 27-2 at 199, Appx. at AR0696, Decision at 7 ¶ 22.

[21] *See* ECF 27-2 at 200, Appx. at AR0697, Decision at 8 ¶ 28.

[22] *See* ECF 27-2 at 199–200, Appx. at AR0696–97, Decision at 7–8 ¶¶ 26, 28.

[23] *See* ECF 27-2 at 202, Appx. at AR0699, Decision at 10 ¶ 44.

[24] *See* ECF 27-2 at 202–03, Appx. at AR0699–700, Decision at 10–11 ¶¶ 44–49.

[25] *See* ECF 27-2 at 202, Appx. at AR0699, Decision at 10 ¶ 44.

[26] *See* ECF 27-2 at 203, Appx. at AR0700, Decision at 11 ¶ 49.

[27] *See id.*

[28] *See* ECF 27-2 at 197, Appx. at AR0694, Decision at 5 ¶ 13; ECF 27-2 at 199, Appx. at AR0696, Decision at 7 ¶ 27.

[29] *See* ECF 27-2 at 200, Appx. at AR0697, Decision at 8 ¶ 29.

[30] *See* ECF 27-2 at 200, Appx. at AR0697, Decision at 8 ¶ 32.

[31] *See* ECF 27-2 at 207, Appx. at AR0704, Decision at 15 ¶ 76.

[32] *See id.*

[33] *See id.*

[34] *See id.* at 15 ¶ 78.

[35] *See* ECF 27-2 at 202, Appx. at AR0699, Decision at 10 ¶ 41.

[36] *See id.* at 10 ¶ 42.

[37] *See* ECF 27-2 at 201, Appx. at AR0698, Decision at 9 ¶ 37.

[38] *See* ECF 27-2 at 204, Appx. at AR0701, Decision at 12 ¶ 58.

[39] *See* ECF 27-2 at 204–05, Appx. at AR0701–02, Decision at 12–13 ¶¶ 58–64.

[40] *See* ECF 27-2 at 205, Appx. at AR0702, Decision at 13 ¶ 64.

[41] *See id.* at 13 ¶ 67.

[42] *See* ECF 27-2 at 205–06, Appx. at AR0702–03, Decision at 13–14 ¶ 68.

[43] *See* ECF 27-2 at 204, 206, Appx. at AR0701, AR0703, Decision at 12 ¶ 54, 14 ¶ 69.

[44] *See* ECF 27-2 at 200, Appx. at AR0697, Decision at 8 ¶ 29.

[45] *See* ECF 27-2 at 204, Appx. at AR0701, Decision at 12 ¶ 55.

[46] *See* ECF 27-2 at 208, Appx. at AR0705, Decision at 16 ¶ 87 ("The March 2024 Center for Autism psychological evaluation report identified Autism as one of [AM's] disabilities. Still, Lab Charter never incorporated that disability into [AM's Plan] as a primary or secondary disability").

[47] *See* ECF 27-2 at 209, Appx. at AR0706, Decision at 17 ¶ 90.

---

[48] *See* ECF 27-2 at 200, Appx. at AR0697, Decision at 8 ¶ 30.

[49] *See id.* at 8 ¶ 31.

[50] *See* ECF 27-2 at 206, Appx. at AR0703, Decision at 14 ¶ 70.

[51] *See* ECF 27-2 at 194, Appx. at AR0691, Decision at 2; ECF 27-2 at 206, Appx. at AR0703, Decision at 14 ¶ 70; *see also* ECF 27 at 17–18, Appx. at AR0013–14. Although Hearing Officer Jelley did not award it Lab Charter also requested AM be placed in a private school. *See* ECF 27 at 17–18, Appx. at AR0013–14 (asking Hearing Officer Jelley to order Lab Charter to "reconvene the [Plan] team and issue a[] [Plan] that offers appropriate individualized services, programming, and educational placement for [AM] including placement . . . at an Approved Private School or other private school").

[52] *See* ECF 27-2 at 1–191, Appx. at AR0502–0688.

[53] *See id.* (showing KB, Patrina Stewart, Hillary El, Thurayya Berry-Petteway, Michelle Chapman, and Jenna Miller testified).

[54] *See* ECF 27-2 at 209, Appx. at AR0706, Decision at 17.

[55] *See id.*

[56] *See* ECF 27-2 at 210, Appx. at AR0707, Decision at 18. KB also claimed Lab Charter violated Section 504 of the Rehabilitation Act. *See* ECF 27-2 at 194, Appx. at AR0691, Decision at 2. Hearing Officer Jelley determined the relief he awarded under the Individuals with Disabilities Education Act "resolves [AM's] intertwined Section 504 [free appropriate public education] claims asserted by [KB], which overlap factually and legally with the [Act's] violations"). *See* ECF 27-2 at 224, Appx. at AR0721, Decision at 32.

[57] *See* ECF 27-2 at 210–14, Appx. at AR0707–11, Decision at 18–22.

[58] *See* ECF 27-2 at 218–26, Appx. at AR0715–23, Decision at 26–34.

[59] *See* ECF 23.

[60] *See* ECF 23-2 at 5–8.

[61] *See* ECF 23-2 at 8–11.

[62] *See* ECF 25.

[63] *See* ECF 23-2 at 5–8.

[64] *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017) (citing 20 U.S.C. § 1412(a)(1)).

[65] *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203 (1982) (explaining a school provides a child with a free appropriate public education when it provides "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction").

Each Plan must "be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential" for it to satisfy the requirement of providing a child with a free appropriate public education. *See D.S.*, 602 F.3d at 557 (quoting *Chambers v. Phila. Bd. of Educ.*, 587 F.3d 176, 182 (3d Cir. 2009)); *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004).

[66] *See D.S.*, 602 F.3d at 557 (quoting *Holmes v. Millcreek Twp. Sch Dist.*, 205 F.3d 583, 589 (3d Cir. 2000)).

[67] *See id.* (citing 20 U.S.C. § 1414(d)(4)) (noting the team "consist[s] of the student's parents and teachers, a curriculum specialist from the local school district, and, if requested, a person with special knowledge or expertise regarding the student" (citing 20 U.S.C. § 1414(d)(1)(B)).

[68] *See id.* (citing 20 U.S.C. § 1414(d)(4)).

[69] *See id.* at 564 (quoting *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 249 (3d Cir. 2009) (quoting *Rowley*, 458 U.S. at 207)).

[70] *See P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

[71] *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012); *see also id.* at 271 ("Questions of law, of course, are unaffected by the burden of persuasion").

[72] *See* ECF 23-2 at 7–8.

[73] *See id.*

[74] *See* ECF 25-1 at 18–20.

[75] *Cf. D.S.*, 602 F.3d at 564–65.

[76] *See* 20 U.S.C. § 1415(b)(1) (requiring "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child . . ."); *see also* 34 C.F.R. § 300.613(a) ("Each participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency . . . . [t]he agency must comply with a request without unnecessary delay and before any meeting regarding a[] [Plan] . . . and in no case more than [forty-five] days after the request has been made.").

[77] *See D.S.*, 602 F.3d at 565 (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007)); *see also Sandra S. v. Upper Darby Sch. Dist.*, -- F. Supp. 3d. --, No. 25-2389, 2025 WL 3770095, at *3 (E.D. Pa. Dec. 31, 2025) (finding parents stated a claim for relief under the Act where they claimed the school failed to provide them with their child's educational records and "impeded [their] opportunity to participate in the decision making process").

[78] *See* ECF 27-2 at 211, Appx. at AR0708, Decision at 19.

[79] *See id.*

[80] *See id.*; *see also* 20 U.S.C. § 1415(b)(1) (requiring "[an] opportunity for the parents of a child with a disability . . . to obtain an independent educational evaluation of the child"); 34 C.F.R. § 300.502(b)(2)–(3) (requiring agency to either provide the independent educational evaluation or file a due process complaint after receiving a request).

[81] *See* ECF 23-2 at 8.

[82] *See id.*

[83] Lab Charter did not argue against Hearing Officer Jelley's decision finding it violated the Act's procedural requirements by "failing to either fund an Independent Educational Evaluation . . . or initiate a due process hearing following [KB's] request." *See* ECF 27-2 at 211, Appx. at AR0708, Decision at 19; ECF 23.

[84] *See* ECF 23-2 at 6.

[85] *See* ECF 25-1 at 10–18.

[86] *See Endrew F.*, 580 U.S. at 390 (citing 20 U.S.C. § 1412(a)(1)).

[87] *See id.* at 399; *see also K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018) (explaining our Court of Appeals's standard—which requires schools to develop a Plan "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities"—comports with the Supreme Court's standard in *Endrew F.* (quoting *Ridley*, 680 F.3d at 269)).

[88] *See Endrew F.*, 580 U.S. at 400–01 (quoting *Rowley*, 458 U.S. at 203–04).

[89] *See id.* at 402 n.2 ("We declined to hold in *Rowley*, and do not hold today, that 'every handicapped child who is advancing from grade to grade . . . is automatically receiving a [free appropriate public education]'" (quoting *Rowley*, 458 U.S. at 203 n.25)); *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 279 (3d Cir. 2012) ("[H]earing officers and reviewing courts must continue to assess the appropriateness of [a Plan] on a case-by-case basis").

[90] *See Endrew F.*, 580 U.S. at 399 (noting the "'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials" (quoting *Rowley*, 458 U.S. at 207)); *K.D.*, 904 F.3d at 255 (explaining a student's "slow progress does not prove that her [Plans] were deficient" and noting "[w]e may not rely on hindsight to second-guess an educational program that was reasonable at the time").

[91] *See Endrew F.*, 580 U.S. at 403–04 ("We will not attempt to elaborate on what 'appropriate' progress will look like from case to case. It is in the nature of the Act and the standard we adopt to resist such an effort: The adequacy of a given [Plan] turns on the unique circumstances of the child for whom it was created"); *D.S.*, 602 F.3d at 564 (explaining whether a Plan is appropriate "is a question of fact" (quoting *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003))).

[92] *See S.H.*, 336 F.3d at 271.

[93] *See S.H.*, 336 F.3d at 271 ("The issue of whether a [Plan] is appropriate is a question of fact . . . . We will defer to the [hearing officer's] credibility determinations unless countered by non-testimonial evidence on the record" (citing *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 526 (3d Cir. 1995)); *id.* at 270 (explaining we "defer to the [hearing officer's] factual findings unless [we] can point to contrary nontestimonial extrinsic evidence on the record"); *see also D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 242 (3d Cir. 2012) ("[W]hether the [School] District fulfilled its FAPE obligations . . . [is] subject to clear error review as [a] question[] of fact'" (quoting *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009))).

[94] *See* ECF 27-2 at 211–12, Appx. at AR0708–09, Decision at 19–20.

[95] *See* ECF 27-2 at 198–201, Appx. at AR0695–98, Decision at 6–9 ¶¶ 18, 20, 23, 26, 28, 37.

[96] *See* ECF 27-2 at 212–14, Appx. at AR0709–11, Decision at 20–22.

[97] *See* ECF 27-2 at 214, Appx. at AR0711, Decision at 22 n.2; *see also J.M. ex rel. M.M. v. Morris Sch. Dist. Bd. of Educ.*, No. 10-6660, 2011 WL 6779546, at *14–15 (D.N.J. Dec. 23, 2011) (upholding administrative law judge's finding a student's passing grades did not reflect progress where the judge discredited the grades in part because the administrative record included test results contradicting them); *Pocono Mountain Sch. Dist. v. J.W. ex rel. J.W.*, No. 16-0381, 2017 WL 3971089, at *9 (M.D. Pa. Sept. 8, 2017) (affirming administrative law judge's finding a school denied a student a free appropriate public education even where the student achieved passing grades because other evidence in the administrative record suggested the student fell behind his peers).

[98] *See* ECF 23-2 at 6. Lab Charter also cites to hearing testimony from Michelle Chapman and Hillary El which is not relevant to whether AM's IEPs from February 2022–August 2024 responded to AM's "evaluative data" and "teacher and Parent input." *See id.*; ECF 27-2 at 144–49; Appx. at AR0641–46, Hearing Transcript at 538:2–555:8 (showing Ms. Chapman testified generally as to materials she reviews and discussed diagnostic testing performed after November 2024 and showing Ms. El testified about a January 21, 2025 Notice for Reevaluation, a February

7, 2025 Reevaluation Report, revising AM's Plan following the Report, and another assessment AM received on February 11, 2025).

[99] *See* ECF 23-2 at 6. Lab Charter also claims the record shows it gave AM "daily pull-out instruction in reading and math, push-in assistance, and individualized behavioral supports" during the 2022–23 school year. *See id.* But it only cites an unsupportive portion of KB's testimony. *See* ECF 23-1 at 3 ¶ 11; *see also* ECF 23-1 at 6 ¶ 26 (citing individualized education plan case manager testimony—which Hearing Officer Jelley discredited—to claim AM received pull-out support during the 2023–24 school year).

[100] *See* ECF 27-2 at 209, Appx. at AR0706, Decision at 17.

[101] *See Downingtown Area Sch. Dist. v. G.W.*, No. 19-5424, 2020 WL 5981902, at *7 (E.D. Pa. Oct. 8, 2020) (finding "there was enough evidence for the Hearing Officer to fairly to conclude that the similarity of the [Plans] indicated a failure from the District" including because "many goals were continuing" and "the type of instruction occurring was not being modified").

[102] Lab Charter did not argue against Hearing Officer Jelley's decision finding it violated the Act's child-find requirements. *See* ECF 23; ECF 27-2 at 211, Appx. at AR0708, Decision at 19 (finding Lab Charter did not "timely consider[]" whether AM had autism despite screenings showing "'Very Elevated' Autism traits during 2023–2024").

[103] *See* ECF 23-2 at 11–12.

[104] *See id.* at 8–11.

[105] *See* ECF 25-1 at 22–25.

[106] *See* ECF 23-2 at 10.

[107] *See id.* at 10–11.

[108] *See* ECF 25-1 at 22–24.

[109] *See D.K.*, 696 F.3d at 243 ("[C]laims for compensatory education . . . are subject to plenary review as conclusions of law" (quoting *P.P.*, 585 F.3d at 734)).

[110] *See id.* at 249.

[111] *See id.* (quoting *P.P.*, 585 F.3d at 739)

[112] *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015).

[113] *See id.* (explaining "a due process complaint must be presented 'within 2 years' of a parent's reasonable discovery date" but remedies are not "limited to injuries that occurred 'not more than [two] years before' that date").

[114] *See id.* at 626 (quoting *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012)).

[115] *See* ECF 27-2 at 216, Appx. at AR0713, Decision at 24.

[116] *See id.* Hearing Officer Jelley did not identify when KB knew or should have known Lab Charter denied AM a free appropriate public education. *See id.* at 23–26. But Lab Charter does not argue KB failed to timely file her complaint. *See* ECF 23-2 at 11.

[117] *See* ECF 27-2 at 216–18, Appx. at AR0713–15, Decision at 24–26. He also ordered Lab Charter to fund AM's transportation costs incurred while attending compensatory education. *See* ECF 27-2 at 218–19, Appx. at AR0715–16, Decision at 26–27; ECF 27-2 at 224–25, Appx. at AR0721–22, Decision at 32–33.

[118] *See* ECF 23-2 at 10 ("[T]he administrative record confirms that AM made academic and functional progress during every academic year in question . . . . AM advanced in reading, math, and writing, and the objective tests demonstrated incremental gains . . . .").

[119] *See id.*

[120] *See* ECF 27-2 at 219–20, Appx. at AR0716–17, Decision at 27–28; ECF 27-2 at 225, Appx. at AR0722, Decision at 33.

[121] *See* ECF 23-2 at 10.

[122] *See id.*

[123] *See id.*

[124] *See G.L.*, 802 F.3d at 625–26.

[125] *See Keystone Cent. Sch. Dist. v. E.E. ex rel. H.E.*, 438 F. Supp. 2d 519, 525–26 (M.D. Pa. 2006) (affirming finding school failed to provide an appropriate education and noting "[i]t logically follows that an award of compensatory education would equal the amount of hours contained within the representative school years" and "[t]o require otherwise would place an arduous and near impossible task upon the administrative bodies to parse out the exact amount of hours [a student] was not benefited by" a free appropriate public education during the school years at issue); *Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 610 (M.D. Pa. 2014) ("[T]he court is persuaded by those courts which have found that an award of full days [of] compensatory education may be an appropriate remedy when the overall effect of a district's failure to provide a [free appropriate public education] resulted in a pervasive loss of education benefit to the student, and finds that the record supports such a remedy here").

[126] *See* ECF 23-2 at 8–9.

[127] *See* ECF 25-1 at 20–22.

[128] *See T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000).

[129] *See id.* at 578–79 (quoting *Carlisle Area Sch.*, 62 F.3d at 535). We apply a two-part test to determine whether a school complied with the Act's least restrictive environment requirement. *See id.* at 579. We first determine "whether education in the regular classroom . . . can be achieved satisfactorily" through "the use of supplementary aids and services." *See id.* (quoting *Oberti ex rel. Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1215 (3d Cir. 1993)). We look at factors like "(1) the steps the school district has taken to accommodate the child in a regular classroom; (2) the child's ability to receive an educational benefit from regular education; and (3) the effect the disabled child's presence has on the regular classroom" to determine whether a school can satisfactorily educate a child in the regular classroom. *See id.* (citing *Oberti*, 205 F.3d at 1215–17). If placement outside the regular classroom is necessary we next ask "whether the school has mainstreamed the child to the maximum extent appropriate." *See id.* (quoting *Oberti*¸ 205 F.3d at 1215). For example, we ask whether "the school has made efforts to include the child in school programs with nondisabled children whenever possible." *See id.* (quoting *Oberti*, 205 F.3d at 1215).

[130] *See* ECF 23-2 at 8–9.

[131] Lab Charter did not argue against Hearing Officer Jelley's decision to require Lab Charter to fund an independent educational evaluation for AM. *See* ECF 23; ECF 27-2 at 220–21, Appx. at AR0717–18, Decision at 28–29.