IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LABORATORY CHARTER SCHOOL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 25-2524 |
| | : | |
| AM, by and through his Parent, KB, and his Parent individually | : : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **March 3, 2026**

      A sixth grader challenged by autism and attention deficit hyperactivity disorder has been fighting for a free appropriate public education from his charter school since at least his 2022 school year. His mother and he brought a challenge through the administrative process. The hearing officer wholly agreed with them as detailed in a comprehensive decision. We affirmed the hearing officer's analysis six weeks ago. The student and his mother now ask us to order the school to reimburse them for reasonable attorneys' fees as allowed by Congress for prevailing parties. The school delays; it argues we should ignore our detailed analysis, change our mind, and deny fees altogether. Or we should delay reviewing fees until after our Court of Appeals reviews today's final order. The school does not challenge the reasonableness of the lawyers' hours or billing rates.

      There has been enough delay for this sixth grader trying to ensure a free appropriate public education. We grant the student's motion for judgment directing the school reimburse him for the reasonable attorneys' fees and uncontested costs.

I.  **Background**

AM is a sixth-grade student at Laboratory Charter School.[1] AM has attention deficit hyperactivity disorder and autism.[2] AM's mother KB believed Lab Charter did not provide AM with a free appropriate public education under federal law. She began pursuing her claims on November 26, 2024 through the Pennsylvania administrative process on her child's behalf.[3] The administrative hearing officer Charles Jelley agreed and awarded AM relief including (1) an independent educational evaluation, (2) a one-hundred-day diagnostic placement, (3) compensatory education for the full 2022–23 and 2023–24 school years, (4) compensatory education for the 2024–25 school year and until Lab Charter issues a new individualized education plan after reviewing the independent educational evaluation and after AM completes his one-hundred-day diagnostic placement, and (5) compensatory education for the 2023, 2024, and 2025 extended school years.[4]

Lab Charter appealed Hearing Officer Jelley's decision to us in May 2025.[5] AM responded with counterclaims asking us to enforce Hearing Officer Jelley's order and to award his counsel with attorneys' fees and costs.[6] Lab Charter then moved for judgment on the administrative record and asked us to reverse Hearing Officer Jelley's decision.[7] We denied Lab Charter's motion on January 23, 2026.[8]

II.  **Analysis**

AM now asks us to enter judgment on his counterclaims for enforcement of Hearing Officer Jelley's order and to award his counsel $176,972.50 in fees and $205.89 in costs.[9] Lab Charter responds and asks us to vacate our order denying its motion for judgment on the administrative record.[10] We interpret this portion of Lab Charter's response as a challenge to any fee. Lab Charter further argues we should not award AM's counsel attorneys' fees and costs

2

because Lab Charter's intended appeal might alter AM's status as the prevailing party.[11] Lab Charter decided to not follow our Order as yet and does not address whether AM's counsels' claimed fees and costs are reasonable.[12] We grant AM's motion for judgment on his counterclaim for enforcement of Hearing Officer Jelley's order. We award AM's counsel $176,972.50 in reasonable fees and $205.89 in uncontested costs.

### A. We deny Lab Charter's request to vacate our earlier Order.

Lab Charter asks us to vacate our January 23, 2026 Order and enter a new order reversing Hearing Officer Jelley's decision under Federal Rule of Civil Procedure 54(b).[13] The Supreme Court through Rule 54(b) allows us to reconsider our interlocutory orders.[14] And our Order denying Lab Charter judgment on the administrative record is interlocutory because it "adjudicate[d] fewer than all the claims" in this case.[15] AM responds we should deny Lab Charter's motion for reconsideration because it repeats the arguments it relied on in its earlier motion for judgment on the administrative record.[16] We agree with AM and will not reconsider our Order.

We may only reconsider an interlocutory order if the person seeking reconsideration "establish[es] good cause for why [we] should revisit" the order and if it is "consonant with justice" to reconsider it.[17] A person seeking reconsideration of an interlocutory order does not need to establish the grounds needed for us to reconsider a final order.[18] But we can still look to these grounds—whether there has been an intervening change in controlling law, there is new evidence available, or there is a need to correct a clear error—for guidance when reviewing a motion to reconsider an interlocutory order.[19] And we must also confirm the person is not just seeking reconsideration of an interlocutory order "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement" with our decision.[20]

Lab Charter has not shown good cause to reconsider our January 23, 2026 Order. Lab Charter instead repeats most of the same arguments it made and record citations it used in its earlier

3

motion for judgment on the administrative record.[21] It has not shown an intervening change in controlling law, new evidence, or a clear error warranting reconsideration and has not identified other grounds demonstrating good cause to reconsider our order. We cannot reconsider our January 23, 2026 Order just because Lab Charter disagrees with it.

### B. We grant AM's motion for judgment on his counterclaim to enforce Hearing Officer Jelley's decision.

AM asks us to enter judgment on his counterclaim for enforcement of Hearing Officer Jelley's administrative order.[22] He argues the record shows Lab Charter has not provided him with the services Hearing Officer Jelley ordered and we affirmed.[23] Lab Charter does not respond to AM's claim it has not implemented Hearing Officer Jelley's and our Order.[24] We agree with AM.

We can enforce a hearing officer's administrative decision.[25] AM attaches several email exchanges showing Lab Charter has not implemented the relief AM won—such as a one-hundred-day diagnostic placement—as of February 9, 2026.[26] Lab Charter does not produce evidence in response to show it complied with Hearing Officer Jelley's specific remedies.[27] It instead admits it "has not yet implemented the relief ordered for AM."[28] The undisputed facts confirm Lab Charter has not complied with Hearing Officer Jelley's order. We grant AM final judgment on his counterclaim for enforcement of our January 23, 2026 Order.

### C. We grant AM's motion for attorneys' fees because Lab Charter does not argue his lawyers' detailed billed hours or hourly fees are unreasonable.

AM asks us to award his attorneys $176,972.50 in fees.[29] Lab Charter's only response is we should not award attorneys' fees because AM might not remain a prevailing party after Lab Charter appeals our earlier decision.[30] So, under Lab Charter's argument, a court could not address attorneys' fees until after a final appeal. This theory ignores the reality of an interlocutory grant of

4

judgment on one issue but not the fees. We agree with AM and award reasonable attorneys' fees of $176,972.50.

Congress through the Individuals with Disabilities Education Act allows us to "award reasonable attorneys' fees" to a "prevailing party" in a case a person brings under the Act.[31] The threshold inquiry is whether we consider AM the prevailing party in this litigation. A person is a "prevailing party" under the Act if a judge has "conclusively resolve[d] a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties."[32] Lab Charter argues we cannot award AM's counsel fees yet because AM might not be a prevailing party after Lab Charter appeals our decision.[33] AM responds "[t]he possibility of a future appeal" does not warrant postponing an attorneys' fee award.[34] We agree with AM. AM is the prevailing party at this stage because we granted him judicial relief on the merits.

Because AM is a prevailing party we may award him "reasonable attorneys' fees."[35] But AM's counsel has the burden to prove their requested fees are reasonable.[36] To determine whether an attorneys' fee award is reasonable we use the "lodestar," which has a "'strong presumption' of 'reasonable[ness].'"[37] We calculate the lodestar by "multiplying the reasonable hours worked by a reasonable hourly rate."[38]

**1. AM's lawyers billed a reasonable number of hours.**

We first decide whether the prevailing party's counsel requested fees for a reasonable number of hours worked. We must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[39]

AM requests fees for attorneys' work dating back to July 19, 2023.[40] Three attorneys—Scott Wolpert, Christine Gordon, and Kathleen Vermilion—and one paralegal—Ruth Kistner—

5

from Timoney Knox LLP represented him.[41] Attorney Wolpert worked 127.8 hours, Attorney Gordon worked 86.1 hours, Attorney Vermilion worked 120.9 hours, and Paralegal Kistner worked 44.8 hours on AM's case.[42] They produced a detailed billing statement in support of their claimed hours worked which confirms time on tasks such as intaking AM's case, ensuring Lab Charter produced AM's educational records, analyzing AM's educational records, litigating AM's case at the administrative level, and litigating AM's case before us.[43]

Lab Charter does not challenge the reasonableness of the recorded hours.[44] We find AM requests fees for a reasonable number of hours worked.

### 2. AM's lawyers billed reasonable rates.

We also decide whether the requested hourly rates are reasonable to calculate the lodestar. Whether an hourly rate is reasonable is based on "the prevailing market rates in the relevant community."[45] We begin with "the attorney's usual billing rate."[46] But the attorney's usual billing rate "is not dispositive"; we must also "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[47] The prevailing party's attorneys have the burden to produce "satisfactory evidence" beyond their "own affidavits" to show their "requested hourly rates" align with "the prevailing market rates in [their] community."[48] For example, the prevailing party can cite the Community Legal Services of Philadelphia's fee schedule or produce affidavits from other attorneys in the community to support their requested fees.[49]

AM's law firm's rates changed throughout the years they worked on his case: (1) Scott Wolpert's rates increased from $550/hour in 2023 to $675/hour in 2026, (2) Christine Gordon's rates increased from $400/hour in 2023 to $495/hour in 2026, (3) Kathleen Vermilion's rates

6

increased from $300/hour in 2023 to $390/hour in 2026, and (4) Ruth Kistner's rates increased from $260/hour in 2023 to $285/hour in 2025.[50] Lab Charter again does not challenge the reasonableness of these identified rates.[51]

Attorneys Wolpert, Gordon, and Vermilion and Paralegal Kistner produced evidence showing they all charged reasonable rates during the years they spent working on AM's case. They attached declarations from Attorney Wolpert and from two experienced local special education attorneys who assert the lawyers and paralegal charged reasonable rates for their services.[52] They also attached Community Legal Services of Philadelphia's fee schedule effective as of January 19, 2023.[53] The fee schedule shows Attorneys Wolpert, Gordon, and Vermilion all charged hourly rates either below or within the ranges Community Legal Services suggests based on their years of experience.[54] After considering the affidavits and the fee schedule we find their rates to be reasonable. And although Paralegal Kistner charged a rate above the ranges Community Legal Services recommends for a paralegal with less than ten years of experience we find her rate to be reasonable as well; she had over thirty years of experience as a special education teacher before starting her role as a paralegal in 2018.[55] We are also guided by our colleagues in finding Attorneys Wolpert, Gordon, and Vermilion and Paralegal Kistner all charged reasonable rates for their work on AM's case.[56]

### 3.  We award AM's counsel the lodestar.

We calculate the lodestar by "multiplying the reasonable hours worked by a reasonable hourly rate."[57] AM's counsels' requested fees—$176,972.50—reflect the lodestar calculation because we agree their hours worked and rates are reasonable. Lab Charter does not ask us to deviate from the lodestar. We thus award AM's counsel $176,972.50 in fees.

7

### D. We grant AM's request to reimburse costs without objection to the reasonableness or statutory authorization for the specific expenses.

AM asks us to award his attorneys $205.89 in costs.[58] AM asks for $55.89 for a federal express shipment to KB and $150.00 for "Subpoena Services."[59] Lab Charter does not oppose these requests.[60] It objects to paying these costs (and all fees) on grounds other than reasonableness or statutory authority to grant this reimbursement. It cannot complain based on grounds it does not argue. We grant AM's motion for reimbursement of the overnight shipping and subpoena services as uncontested.

### III. Conclusion

Lab Charter objects to AM's reasonable fees and costs by claiming we erred in our January 23, 2026 Order. It then leaps to the conclusion it may unilaterally disregard our reasoned findings affirming Hearing Officer Jelley's detailed analysis. So it will not honor an Order until compelled to do so. It alternatively argues we should defer awarding fees to the prevailing party AM until after a final order on appeal. It does not challenge the reasonableness of fees or costs nor the statutory authority to award fees and costs.

We disagree with both of Lab Charter's arguments. We find no basis (and Lab Charter offers none) to challenge the reasonableness of AM's fees and costs. AM waited long enough for a free appropriate public education and for reimbursement of attorneys' fees. We grant AM's motion for judgment on his counterclaim to enforce Hearing Officer Jelley's decision and grant AM's motion for attorneys' fees and costs. We award AM's counsel $176,972.50 in reasonable fees and $205.89 in uncontested costs.

---

[1] *Cf.* ECF 30-4 at 20, Appx. at 16, Decision at 3 ¶ 1 (showing AM was a fifth-grade student as of Hearing Officer Jelley's April 2025 decision).

[2] *See* ECF 30-4 at 20, Appx. at 16, Decision at 3 ¶ 3.

---

³ *See* ECF 30-4 at 4–16, Appx. at 1–13.

⁴ *See* ECF 30-4 at 35–51, Appx. at 31–47, Decision at 18–34.

⁵ *See* ECF 1.

⁶ *See* ECF 7 at 14–22 ¶¶ 54–81.

⁷ *See* ECF 23; *see also* ECF 13 at 2 ¶ 7 (showing we granted AM leave to move for judgment on his counterclaims after we decided Lab Charter's motion for judgment on the administrative record).

⁸ *See* ECF 28; ECF 29.

⁹ *See* ECF 30.

¹⁰ *See* ECF 31 at 3–11.

¹¹ *See id.* at 12–14.

¹² *See* ECF 31.

¹³ *See id.* at 3–11.

¹⁴ *See* Fed. R. Civ. P. 54(b) (explaining any "order or other decision" we issue in a case which "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" (emphasis added)); *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (addressing motions to reconsider an order granting partial summary judgment and asserting "reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)").

¹⁵ *Cf.* Fed. R. Civ. P. 54(b).

¹⁶ *See* ECF 32 at 3–4.

¹⁷ *See Qazizadeh*, 214 F. Supp. 3d at 295 (first citing *Confer v. Custom Eng'g Co. Emp. Health Benefit Plan*, 760 F. Supp. 75, 77 (W.D. Pa. 1991); and then quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F. Supp. 2d 630, 632 (M.D. Pa. 2007)).

¹⁸ *See id.*

9

---

[19] *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (providing grounds to reconsider final orders); *Carnevale v. DiGiovanni*, No. 22-341, 2026 WL 346207, at *2 (W.D. Pa. Feb. 9, 2026) (explaining "courts frequently look to these standards for guidance in considering" motions to reconsider under Rule 54(b) (quoting *Wells v. Houston*, No. 22-1641, 2024 WL 4591445, at *2 (W.D. Pa. Oct. 28, 2024)); *see also Qazizadeh*, 214 F. Supp. 3d at 298 ("An alleged clear error of fact, which meets the stringent requirements for reconsideration of final orders . . . logically meets the lesser threshold for reconsideration of interlocutory orders.").

[20] *See Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

[21] *See* ECF 23; ECF 31.

[22] *See* ECF 30 at 1; ECF 7 at 14–17 ¶¶ 54–62.

Our Court of Appeals in *D.E. v. Central Dauphin School District* directed we can "enforce a favorable decision obtained at the administrative level" but did not instruct us on the standard to apply to determine whether a school failed to comply with a hearing officer's administrative order. *See D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 278 (3d Cir. 2014). Our review of our colleagues' decisions suggests whether a school complied with a hearing officer's award is a question of fact we review under a summary judgment standard. *Cf. Sch. Dist. of Phila. v. Post*, No. 15-4501, 2017 WL 3676970, at *3–4 (E.D. Pa. Aug. 23, 2017) (citing the summary judgment standard, looking to the record, and concluding certain facts are "undisputed" and showed the school complied with the hearing officer's order); *Price v. Commonwealth Charter Acad. Cyber Sch.*, No. 19-4633, 2021 WL 1405876, at *1, *8, *10 (E.D. Pa. Apr. 14, 2021) (reviewing summary judgment arguments on a student's claim for enforcement of a hearing officer's decision and finding "the undisputed facts establish that [the school] did not violate, or fail to comply with, the Hearing Officer's Decision and Order . . ."); *cf. also J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011) (reviewing request to enforce a settlement agreement under the Act and noting because he would not need to "review any decision by the Hearing Officer, a motion to enforce a settlement agreement under the [Act] based upon record evidence is better treated as a motion for summary judgment and not a motion for judgment on the administrative record").

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quotation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the nonmoving party. *Id.* We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)). The Supreme Court "outlined two closely related methods for a movant to succeed at summary

judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "*Celotex* approach," the moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . *on which that party will bear the burden of proof at trial*." *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, 24 F.4th at 204 (citing *Celotex Corp.*, 477 U.S. at 322).

We "view the facts and draw reasonable inferences 'in the light most favorable to'" Lab Charter as the "party opposing" AM's summary judgment motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

[23] *See* ECF 30-2 at 17; ECF 32 at 2–3.

[24] *See* ECF 31.

[25] *See D.E.*, 765 F.3d at 278 (holding "individuals seeking to enforce a favorable decision obtained at the administrative level" can sue in federal court to enforce the decision).

[26] *See* ECF 30-4 at 173–75, Appx. at 159–61 (showing Lab Charter refused AM's requested one-hundred-day diagnostic placement before appealing); ECF 30-4 at 177, Appx. at 163 (showing Lab Charter's counsel claimed AM's request was "moot" because of the appeal); ECF 30-4 at 179–84, Appx. at 165–70 (showing AM's counsel contacted Lab Charter's counsel and KB emailed Lab Charter's "Chief Executive Officer" after our January 23, 2026 order).

[27] *See* ECF 31.

[28] *See* ECF 31-3 at 4 ¶ 21.

[29] *See* ECF 30-2 at 30. AM seeks fees under both the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act. *See* ECF 7 at 17–22 ¶¶ 63–81 (requesting fees under both statutes); ECF 30.

[30] *See* ECF 31 at 12–14.

[31] *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). Section 504 also allows prevailing parties to recover attorneys' fees. *See* 29 U.S.C. § 794a(b) ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").

[32] *See Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 259 (3d Cir. 2025) (quoting *Lackey v. Stinnie*, 604 U.S. 192, 203–04 (2025)); *see also M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017) (describing a "prevailing party" under the Act as one who "obtain[s] a 'material alteration of the legal relationship of the parties' that is 'judicially sanctioned'" (quoting *Raab v.*

*City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016))). Our Court of Appeals has also described a "two-pronged test" to determine whether a person is a prevailing party where we ask (1) whether the person "achieved relief" and then ask (2) whether "there is a causal connection between the litigation and the relief from the defendant." *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) (quoting *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002)).

[33] *See* ECF 31 at 12–14.

[34] *See* ECF 32 at 5–7.

[35] *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also* 29 U.S.C. § 794a(b).

[36] *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (explaining the prevailing party's attorneys have the burden to produce "satisfactory evidence" to support their "requested hourly rates" (quoting *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))).

If the prevailing party's attorneys submit evidence in support of their requested fees the burden shifts to the opposing party to "challenge, by affidavit or brief with sufficient specificity . . . the reasonableness of the requested fee." *See Rode*, 892 F.3d at 1183 (citing *Bell v. United Princeton Props., Inc.*, 884 F.2d 713 (3d Cir. 1989)). The analysis in *Maldonado* and *Rode* apply in the context of attorneys' fee disputes under the Act even though they involve attorneys' fees awarded under a different statute. *See Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 561 n.1 (D. Del. 2019) ("Although *Maldonado* and many of the cases that set forth the legal standard for determining a fee award do so in the context of awarding attorney's fees pursuant to 42 U.S.C. § 1988, [our Court of Appeals] 'interpret[s] the language of [section] 1988 and the [Act's] attorneys' fees provision in the same way.'" (quoting *M.R.*, 868 F.3d at 225)).

[37] *See Augustyn*, 139 F.4th at 259–60 (quoting *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017)); *Maldonado*, 256 F.3d at 184 (explaining we presume the lodestar is reasonable when the prevailing party "has carried his burden of showing that [his] claimed rates and number of hours are reasonable" (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986))). But we retain "discretion to make certain adjustments" to the lodestar if the "party seeking adjustment" has shown it is warranted. *See Rode*, 892 F.2d at 1183.

[38] *See Augustyn*, 139 F.4th at 259 (citing *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992)).

[39] *See Maldonado*, 256 F.3d at 184 (quoting *Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

[40] *See* ECF 30-4 at 87–107, Appx. at 81–101 (showing itemized bill with balance due of $176,972.50 for work performed from July 19, 2023 until February 5, 2026).

---

[41] *See* ECF 30-4 at 129–33, Appx. at 120–24.

[42] *See* ECF 30-4 at 106–07, Appx. at 100–01.

[43] *See* ECF 30-4 at 87–107, Appx. at 81–101.

[44] *See* ECF 31.

[45] *See Maldonado*, 256 F.3d at 184 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[46] *See id.* at 184–85.

[47] *See id.* (first quoting *Pub. Int. Grp.*, 51 F.3d at 1185; and then quoting *Rode*, 892 F.3d at 1183).

[48] *See id.* at 184 (quoting *Washington*, 89 F.3d at 1035); *Rode*, 892 F.2d at 1183 ("To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" (quoting *Hensley*, 461 U.S. at 433)).

[49] *See Rayna P.*, 390 F. Supp. 3d at 564–67 (relying on the most recent Community Legal Services of Philadelphia fee schedule and awards in other cases to determine a reasonable fee for each attorney); *Anna C. ex rel. K.C. v. Colonial Sch. Dist.*, No. 24-6313, 2026 WL 313462, at *3–4 (E.D. Pa. Feb. 5, 2026) (crediting affidavits from other attorneys and the Community Legal Services fee schedule as supporting counsel's requested fees). We can also look to attorneys' fee awards in other cases. *See Anna C.*, 2026 WL 313462, at *4.

[50] *See* ECF 30–4 at 132–33; Appx. at 123–24 (showing Attorney Wolpert billed $550/hour in 2023, $575/hour in 2024, $625/hour in 2025, and $675/hour in 2026); *id.* (showing Attorney Gordon billed $400/hour in 2023, $425/hour in 2024, $465/hour in 2025, and $495/hour in 2026); *id.* (showing Attorney Vermilion billed $300/hour in 2023, $345/hour in 2024, $375/hour in 2025, and $390/hour in 2026); *id.* (showing Paralegal Ruth Kistner billed $260/hour in 2023 and 2024 and billed $285/hour in 2025).

[51] *See* ECF 31.

[52] *See* ECF 30-4 at 127–35, Appx. at 118–26 (Scott Wolpert declaration); ECF 30–4 at 139–43, Appx. at 128–32 (Mark Voigt declaration); ECF 30–4 at 145–49, Appx. at 133–37 (Frederick Stanczak declaration).

[53] *See* ECF 30-4 at 137, Appx. at 127.

[54] Attorney Wolpert has over thirty years of experience. *See* ECF 30-4 at 115, 127, Appx. at 107, 118. His requested fees—which increased from $550/hour in 2023 to $675/hour in 2026—all fall below Community Legal Service's fee schedule for attorneys with more than twenty-five years of experience. *See* ECF 30-4 at 137, Appx. at 127 (showing the fee schedule calls for fees ranging from $735–850/hour for attorneys with over twenty-five years of experience). Attorney Gordon had fifteen years of experience in 2023 and now has almost eighteen years of experience. *See* ECF

30-4 at 120, 129–30, Appx. at 112, 120–21. Her requested fees—which increased from $400/hour in 2023 to $495/hour in 2026—also fall below the fee schedule for attorneys with her experience. *See* ECF 30-4 at 137, Appx. at 127 (showing the fee schedule calls for fees ranging from $420–525/hour for attorneys with eleven to fifteen years of experience and $535–625/hour for attorneys with sixteen to twenty years of experience). And Attorney Vermilion has almost ten years of experience. *See* ECF 30-4 at 123, 130, Appx. at 115, 121. Her requested fees—which increased from $300/hour in 2023 to $390/hour in 2026—began below the fee schedule and remain within the fee schedule for attorneys with her experience level even after increasing her rates. *See* ECF 30-4 at 137, Appx. at 127 (showing the fee schedule calls for fees ranging from $320–415/hour for attorneys with six to ten years of experience).

[55] *See* ECF 30-4 at 125, 134, Appx. at 117, 125.

[56] *See A.L.L. v. Lab'y Charter Sch.*, No. 24-4998, 2025 WL 3269941, at *7 & n.9 (E.D. Pa. Nov. 24, 2025) (finding the same counsel as in this case to have reasonable rates "[b]ased on their close adherence to the [Community Legal Services] rates" and "the specialized nature of special education law"), *appeal filed*, No. 25-3445 (3d Cir. Dec. 19, 2025); *Lab'y Charter Sch. v. MRS ex rel. SS*, No. 21-5538, 2025 WL 2899888, at *3 (E.D. Pa. Oct. 9, 2025) (finding the same counsel as in this case to have reasonable rates).

[57] *See Augustyn*, 139 F.4th at 259 (citing *Dague*, 505 U.S. at 559).

[58] *See* ECF 30-2 at 30.

[59] *See* ECF 30-4 at 106, Appx. at 100.

[60] *See* ECF 31.